Tammy Hussin, Esq. (Bar No. 155290)
Hussin Law Firm
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel. (877) 677-5397
Tammy@HussinLaw.com

Attorney for Plaintiff, Jeremy Wiltse

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| Jeremy Wiltse<br><br>        Plaintiff,<br><br>  vs.<br><br>Bank of America, N.A<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br>**1. VIOLATION OF THE ELECTRONIC FUNDS TRANSACTION ACT, 15 U.S.C. §1693, *ET. SEQ.***<br>**2. NEGLIGENCE**<br>**3. BREACH OF CONTRACT** |

      For this Complaint the Plaintiff, Jeremy Wiltse, by and through his undersigned counsel, states as follows:

---
COMPLAINT FOR DAMAGES

1. This action arises out of violations of the Electronic Funds Transaction Act, 15 U.S.C. §1693, *et. seq.* ("EFTA"), Negligence, and Breach of Contract.

2. Plaintiff, Jeremy Wiltse ("Plaintiff"), is an adult individual residing in San Joaquin, California.

3. Defendant, Bank of America Bank, N.A. ("Bank of America" or "Defendant"), is incorporated in Delaware, and regularly conducts business in this judicial district and throughout the state of California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action because Plaintiff is a citizen of San Joaquin County, Bank of America is incorporated under the laws of Delaware and has its principal place of business in North Carolina, and the amount in controversy exceeds $75,000 exclusive of interests and costs. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 with respect to the cause of action arising under the EFTA.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the acts or omissions giving rise to the claims in this Complaint occurred in this District, and because Defendant is subject to the Court's personal jurisdiction with respect to this action.

## BACKGROUND

6. Over the last decade, Cybercrime has risen at an exponential rate. *See, FTC Consumer Sentinel Network Data Base* (Feb. 2022).[1] In 2021 alone, the FTC received 5.7 million fraud reports with a combined total of $5.9 billion dollars in losses, and identity theft claims increased 27% in a single year. *Id*. at p. 6. Sophisticated criminals

---
[1] https://www.ftc.gov/system/files/ftc_gov/pdf/CSN%20Annual%20Data%20Book%202021%20Final%20PDF.pdf

are able to hack directly into bank accounts using a variety of nefarious means. They can obtain vital login credentials, including passwords and PIN numbers, sell the account credentials on the dark web, ultimately leading to large amounts of money getting syphoned from customer bank accounts on an annual basis. In fact, the FTC reported that unauthorized bank transfers and payments accounted for the highest aggregate fraud losses in 2021 ($756 million). *Id*. at p. 5.

7. Unsurprisingly, the growing increase in bank account cybercrime has led to a mounting surge of bank customers complaining of unauthorized transactions. When investigating customer claims of fraudulent transactions, financial institutions, including Bank of America, have specific statutory obligations under the EFTA. Investigations of fraudulent transactions conducted by a bank "must be reasonable." 71 Fed. Reg. 1638, 1654 (Jan. 10, 2006). Regulation E, 12 C.F.R. § 1005.11(c)(4), requires that a financial institution in investigating an error must conduct, at a minimum, a "review of its own records regarding [the] alleged error." 12 C.F.R §1005.11(c)(4). This review must necessarily include at least "any relevant information within the institution's own records." 12 C.F.R. Part 1005, Supp. I, Comment 11(c)(4)-5.

8. Bank of America is one of the largest banks in the nation, and one of the most notorious for mistreating and stealing from its customers. Bank of America has a long history of ignoring state and federal laws and systematically engaging in unfair and unlawful business practices, causing widespread injuries to consumers across the country. The bank's nefarious and illegal antics have caused it to incur literally ***billions*** of dollars in government fines. In fact, since 2000, Bank of America has been fined by the government 251 times, with a whopping $82.9 billion in racked up fines, more than any other bank in history.[2]

---

[2] *See, e.g.,* https://thefintechtimes.com/bank-of-america-has-accumulated-82-9-billion-in-fines-since-2000-brokerchooser-study-finds/.

3 COMPLAINT FOR DAMAGES

9. Part of these fines include penalties against Defendant for systemic violations of the EFTA. Indeed, just recently, the Consumer Financial Protection Bureau ("CFPB") determined systematically violates the EFTA when evaluating customer disputes of unauthorized transactions. *See, In the Matter of Bank of America, N.A.,* Consent Order, CFPB 2022-CFPB-0004, Document 1 (July 14, 2022). The CFPB determined that Bank of America routinely violates the EFTA by failing to conduct reasonable investigations, relies on archaic and ineffectual metrics to analyze customer fraud claims, and systematically ignores obvious indicia of fraud the bank has in its own records. In doing so, Bank of America wrongfully denies customer fraud disputes, accuses its customers of lying, and refuses to restore the stolen funds back into their accounts, all of which violates the EFTA. *Id*.

10. Adding insult to injury, Bank of America has a weak and outdated security system, making it easier for fraudsters to gain unauthorized access to customer accounts.

11. Bank of America has a duty to maintain a reasonable level of security to avoid unauthorized account access. As part of this effort, Bank of America has a system that monitors the IP addresses of its customers' online account activity; however, Bank of America systematically ignores its own warning signs, and does nothing to stop potential fraudsters from assuming control of customer accounts and conducting unauthorized transactions.

12. As demonstrated herein, such is the case with Plaintiff.

### BANK OF AMERICA AND PLAINTIFF

13. On an unknown date, Bank of America allowed fraudsters to gain access Plaintiff's Bank of America account.

14. Beginning on November 18, 2021 and continuing through November 20, 2021, the fraudster assumed control of Plaintiff's account and conducted five

unauthorized electronic transactions, totaling $4,822.00.

15. Plaintiff did not authorize the transactions and never gave his account credentials to anyone.

16. Upon discovering the fraud, Plaintiff immediately contacted Bank of America and filed a fraud claim. Plaintiff has gone through great lengths since then to try to get the stolen funds back from Bank of America, but to no avail. All the while, Plaintiff was met with inept representatives and botched investigations, including Defendant accidentally dropping his fraud claim.

17. Upon information and belief, during its investigation, Bank of America ignored obvious indicia that Plaintiff's account had been compromised, and instead relied on outdated methods to analyze whether his fraud claim was legitimate.

18. On August 23, 2022, counsel for Plaintiff emailed counsel for Bank of America demanding in part that it reimburses Plaintiff for the funds stolen from his account. Following the email, Bank of America reimbursed Plaintiff. Plaintiff remains entitled to statutory damages as set forth below.

## COUNT I
## ELECTRONIC FUNDS TRANSACTION ACT
## 15 U.S.C. §1693, *et. seq.*

19. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

20. Because Plaintiff did not give actual authority to the fraudster(s) to initiate the electronic funds transfers, the transactions initiated by the fraudster(s) constituted unauthorized electronic fund transfers under §1693a(12).

21. Bank of America failed to conduct a reasonable investigation by relying on archaic and outdated metrics to investigate whether the errors in Plaintiff's account had in fact occurred. The bank failed to include in its investigation "relevant

information" within its possession and ignored obvious indicia that Plaintiff's account had been hacked.

22. Bank of America did not have a reasonable basis for believing there were not unauthorized transactions in Plaintiff's account, in violation of §1693f(e)(1)(B).

23. Bank of America knowingly and willfully concluded that Plaintiff had performed the transactions, when such conclusion could not reasonably have been drawn from the evidence available to it at the time of its investigation, in violation of §1693f(e)(2).

24. Plaintiff provided notice to Bank of America less than two business days after learning of the fraudulent transactions that occurred in his account. Under 12 C.F.R. § 1005.6(b)(1), Plaintiff's liability is capped at $50 in these circumstances. Despite this cap on liability, Bank of America subjected each Plaintiff to over $50 in liability. By holding Plaintiff responsible for the full amount of the unauthorized transfer rather than the limits set forth by § 1693g(a), Bank of America has violated the EFTA.

25. As a direct and proximate result of knowingly and/or willfully violating §§ 1693f(e)(1)(B) and (2), Plaintiff is entitled to treble damages, statutory damages, as well as attorney's fees and costs.

## COUNT II
## NEGLIGENCE

26. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

27. Defendant has a duty to maintain adequate security measures to prevent fraudsters from accessing customer accounts.

28. Upon information and belief, Bank of America ignored warning signs of account compromise, and failed to warn Plaintiff of suspicious account login activity.

In addition, Bank of America took no action to stop the fraudsters from assuming control of Plaintiff's account and/or from conducting the unauthorized transactions.

29. Bank of America breached its duty to Plaintiff by failing to warn him and/or by failing to take steps to prevent the fraudster(s) from accessing his account.

30. Upon information and belief, Bank of America knew or should have known that Plaintiff's account was being compromised, and it was reasonably foreseeable that financial harm would come to Plaintiff as a result.

31. Bank of America's utter disregard for known and obvious risk factors was a direct and proximate cause, as well as a substantial factor, in bringing about the financial harm that resulted to Plaintiff.

32. But for Bank of America failure to prevent the unauthorized access and/or its failure to warn Plaintiff of unusual account login activity, Plaintiff would not have sustained financial harm.

33. As a result, Bank of America is liable to compensate Plaintiff for the full amount of his actual harm, as well as compensatory damages, punitive damages as permitted under the law.

## COUNT III
## BREACH OF CONTRACT

85. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

86. The contract between Plaintiff and Defendant provides in Section 9:

> Federal law (described in the section below entitled "Regulation E Liability Disclosure; Your Liability in Case of Loss, Theft or Unauthorized Transactions") may limit your liability for unauthorized transactions in some circumstances. Under the Bank of America "zero liability" policy, you may incur no liability for unauthorized use of your Card up to the amount of the transaction, provided you notify us within a

reasonable time of the loss or theft of your Card, Card number or PIN or its unauthorized use, subject to the following terms and conditions…

87. Plaintiff did all that was required of him by promptly reporting the unauthorized transactions to Bank of America, yet Bank of America refused to restore the stolen funds back to Plaintiff.

88. Contrary to that binding agreement, Defendant refused to honor it, and instead basically accused Plaintiff of lying and refused to refund his stolen money. At the very least, by failing to limit Plaintiff's losses to those amounts set forth in the contract, Bank of America materially breached Plaintiff's account agreement.

89. Bank of America also promised to keep Plaintiff's account secure from unauthorized access. Bank of America materially breached its promised to Plaintiff by failing to identify obvious signs of security risks, and by failing to adequately protect his account from being compromised.

90. As a direct and proximate result of Defendant's breach of the Account Agreement, Plaintiff lost more funds than he should have as a result of unauthorized transfers, and he is therefore entitled to an award of actual damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against the Defendant:

A. An Order requiring Bank of America to restore the funds taken by the fraudsters.

B. An award of actual damages, statutory damages, treble damages, punitive damages, and reasonable attorneys fees and costs; and

C. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED: January 19, 2023

By: */s/ Tammy Hussin*
Tammy Hussin, Esq.
Hussin Law Firm
Attorney for Plaintiff, Jeremy Wiltse